UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

R.T., *et al.*,

    *Plaintiffs*,

v.

BRADLEY COUNTY BOARD OF
EDUCATION, *et al.*,

    *Defendants*.

Case No. 1:25-cv-86

District Judge Atchley

Magistrate Judge Dumitru

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Jordan Moats's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim upon Which Relief Can Be Granted [Doc. 16] and Defendants Bradley County Board of Education ("BCBOE"), Kirk Campbell, Katie Cooper, and Jennifer Wisti's (collectively "Bradley County Defendants") Motion to Dismiss [Doc. 20]. Both Defendant Moats and Bradley County Defendants seek dismissal of Plaintiffs' claims. For the reasons explained below, Defendants' Motions to Dismiss [Docs. 16, 20] will be **GRANTED**, and Plaintiffs' Complaint [Doc. 1] will be **DISMISSED WITHOUT PREJUDICE**.

I.    **BACKGROUND**[1]

This case arises out of the alleged mistreatment of L.T., a Bradley County student, by BCBOE personnel. In kindergarten, L.T. was diagnosed with ADHD and Anxiety with a behavioral component based on an inability to regulate her emotions. [Doc. 1 at ¶ 3]. Because of L.T.'s conditions, she was involved in several "incidents" during the 2022–2023 school year,

---

[1] For purposes of the currently pending Motions to Dismiss [Docs. 16, 20], all facts in the complaint [Doc. 1] are taken as true and viewed in the light most favorable to the Plaintiffs. The following represents the allegations pertinent to the disposition of the Motions to Dismiss [Docs. 16, 20].

which prompted school staff to create a Behavior Safety Plan but not an individualized education plan ("IEP"). [*Id.* at ¶¶ 3–4]. However, after a difficult process with BCBOE, an IEP was adopted for L.T.'s educational safety, which placed her into a Special Education classification. [*Id.* at ¶¶ 4–9]. Though, even with an IEP in place, L.T. was suspended from school on several occasions for issues that should have been addressed in accordance with the IEP. [*Id.* at ¶ 8].

During the 2023–2024 school year, L.T. began first-grade and made significant progress. [*Id.* at ¶ 14]. That trajectory changed, however, after an incident on March 20, 2024. [*See id.* at ¶¶ 18, 67–72]. Upon arriving at the school's auditorium that morning, L.T. noticed her brother, S.T., was sitting with C. LNU, a student who had previously attacked S.T. and was subject to a permanent no-contact order issued by the school principal, Kirk Campbell. [*Id.* at ¶¶ 11–13, 18]. Aware of the prior attack and no-contact order between S.T. and C. LNU, L.T. became upset and went to inform Special Education Teacher Katie Cooper. [*Id.* at ¶¶ 19–20]. Rather than checking on the students, Cooper, who was familiar with L.T.'s IEP, dismissed L.T. [*Id.* at ¶ 21]. This infuriated L.T., and she raised her middle finger towards C. LNU, as she proceeded to take her seat. [*Id.* at ¶ 22]. After C. LNU told Cooper what L.T. had done, Cooper proceeded to call L.T. to the front of the auditorium and publicly discipline her in front of the other students. [*Id.* at ¶ 23]. L.T. responded by running to the back of the auditorium to calm down, a response to stress noted in her IEP. [*Id.* at ¶ 26]. Once the students were dismissed for class, L.T. refused to leave the auditorium and, according to Campbell, began to kick, bite, and punch the school staff who tried to escort her to class. [*Id.* at ¶ 31]. In a phone call to L.T.'s parents (Mr. and Mrs. T) after the incident, Campbell advised them that their child was "lightly assisted to class by being held lightly under the arms" by Cooper and Jennifer Wisti, a para-professional in the Special Education Department at L.T.'s school. [*Id.* at ¶¶ 30–31]. Campbell further explained that the incident was

2

Case 1:25-cv-00086-CEA-MJD    Document 49    Filed 02/13/26    Page 2 of 20    PageID #: 366

resolved, and L.T. went to class. [*Id.*]. In addition, Badley County Sheriff's Deputy Jordan Moats, who is assigned to L.T.'s school as a School Resources Officer, also spoke to Mr. and Mrs. T on the phone, but provided no further details regarding the incident. [*Id.* at ¶ 32].

Upon being picked up from school that day, L.T. explained to her parents what had happened and proceeded to say, "They wallered me down in the floor and made my face feel fuzzy." [*Id.* at ¶¶ 34–35]. Fearing that their child had been improperly choked during the incident, Mr. and Mrs. T requested a meeting with school staff and filed an Open Records Request with the Bradley County Sheriff's Office requesting Officer Moats's body cam footage and reports regarding L.T. [*Id.* at ¶ 35]. It was only after Mr. and Mrs. T requested a meeting with school staff that a restraint report filed with the State of Tennessee, in regard to a "Partial Restraint." [*Id.* at ¶ 37]. During the meeting, school staff described the incident as a "Partial Restraint" as they escorted L.T. to her class. [*Id.* at ¶ 39]. Additionally, Officer Moats's written report indicates that he observed a student yelling at staff in the hallway and that he followed Teachers Cooper and Wisit into the Special Education Office where L.T. was taken. [*Id.* at ¶ 41]. At this point, Officer Moats's report states that L.T. attempted to grab his firearm, taser, and ammunition, and that he restrained her until she was eventually calmed down by Wisti and Cooper. [*Id.*].

However, upon review of Officer Moats's body cam footage, neither the staff's narrative nor Officer Moats's report aligned with what had actually occurred. [*Id.* at ¶¶ 43–44]. In fact, the footage showed that Cooper, Wisti, and Moats repeatedly instigated L.T. [*See id.* at ¶¶ 44–64]. At one point, L.T. attempted to open the packaging of a "bubble gun," to which Cooper stated, "Is that what you're going to hurt me with? Bubbles?". [*Id.* at ¶¶ 47–48]. At another point, L.T. asked for her Mommy, to which Wisti replied, "Your mommy doesn't want you, it's school time." [*Id.* at ¶ 64]. Later, L.T. grabbed dry erase markers and began writing "kill" on the whiteboard and

walls. [*Id.* at ¶ 58]. Rather than attempting to calm L.T. down, Wisti directed L.T. how to properly spell "kill." [*Id.* at ¶¶ 58–59]. L.T. then began to mark on Cooper and Officer Moats with the dry erase marker, and Moats could be heard saying, "Mark of the Beast," while attempting to remove the mark from his forearm. [*Id.* at ¶ 60]. Moreover, the body cam footage also showed that Wisti restrained L.T. in an improper manner, such that she became slow of movement and slumped over. [*Id.* at ¶¶ 55–56]. At another point in the footage, Cooper and Wisti could be seen dragging L.T. into the Special Education Office by her arms, with her head on the floor. [*Id.* at ¶ 57]. Finally, the footage showed that L.T. approached Officer Moats from his left side and reached up towards his radio microphone, not towards his weapon. [*Id.* at ¶ 64].

As a result of this incident, L.T. became very lethargic and did not want to return to school. [*Id.* at ¶ 67]. L.T.'s doctors, after ruling out other possible medical conditions, believed she was suffering from a trauma response. [*Id.* at ¶¶ 68–71]. On several occasions, L.T. stated, "I don't want those teachers to hurt me." [*Id.* at ¶ 74]. L.T. did not return to school for the remainder of the 2023–2024 school year. [*Id.* at ¶ 72].

Plaintiffs, R.T and K.T., parents of and next friends of L.T., filed this instant action on March 14, 2025, asserting ten separate causes of action, including two federal claims for violations of the Fourteenth Amendment and various state law claims. Plaintiffs seek declaratory and prospective relief, requesting an injunction to prevent further violations of Plaintiffs' due process rights. In addition, Plaintiffs also seek monetary relief.

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to

4

Case 1:25-cv-00086-CEA-MJD    Document 49    Filed 02/13/26    Page 4 of 20    PageID #: 368

relief." *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (internal quotations omitted). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. ANALYSIS

Bradley County Defendants and Defendant Moats have filed separate motions to dismiss [Docs. 16, 20], each asserting different grounds for why Plaintiffs' claims should be dismissed. The Court will analyze each motion in turn.

#### a. Bradley County Defendants' Motion to Dismiss [Doc. 20]

Bradley County Defendants contend that Plaintiffs' complaint [Doc. 1] must be dismissed because Plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities Act ("IDEA"). [Doc. 20 at 1]. Regardless of whether a plaintiff brings his or her claims under the IDEA, *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017), requires the Court to consider the "gravamen" of the claims in the complaint to determine whether the plaintiff seeks relief for the denial of a Free Appropriate Public Education ("FAPE"). If Plaintiffs' claims are primarily about the denial of a FAPE, administrative exhaustion is required regardless of how the claims are couched.

"The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry*, 580 U.S. at 158. A FAPE consists of "special education and related services that have been provided at public expense . . .; meet the standards of the State educational agency; include an appropriate . . . education in the State involved; and are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. § 1401(9). The IEP is the "primary vehicle" for providing each eligible child with a FAPE. *Fry*, 580 U.S. at 158 (*quoting Honig v. Doe*, 484 U.S. 305, 311 (1988)). The IDEA gives an eligible child a substantive right to a FAPE when the State accepts federal financial assistance. *Id.*

The IDEA also establishes procedures for resolving disputes between parents and schools. *See id*. First, a parent may file a complaint "as to any matter concerning the provision of a FAPE" with the local or state educational agency, as provided by state law. *Id.*; 20 U.S.C. § 1415(b)(6). Or, the parties may pursue mediation. 20 U.S.C. § 1415(e). If the disagreement persists, the parties proceed to a due process hearing before an impartial hearing officer. § 1415(f)(1)(A). Whether the parents allege procedural or substantive deficiencies, the due process hearing officer's decision must be "based on a determination of whether the child received a free appropriate public education." § 1415(f)(E)(i), (ii). If the due process hearing is conducted by a local educational agency, "any party aggrieved by the findings and decision rendered" may appeal to the State educational agency. § 1415(g)(1).

The final step is judicial review of the administrative process:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this

6
Case 1:25-cv-00086-CEA-MJD    Document 49    Filed 02/13/26    Page 6 of 20    PageID #: 370

section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C.A. § 1415(i)(2)(A). The "complaint" authorized by the section may concern "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(6).

Importantly, the administrative review process established by § 1415 can apply even where an IDEA claim is not asserted:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws **seeking relief that is also available under this subchapter**, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(l) (emphasis added). "According to that closing phrase, a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures." *Fry*, 580 U.S. at 161.

The Supreme Court of the United States addressed the substantive scope of the IDEA and its exhaustion requirement at length in *Fry*. To determine whether a complaint brought under another statute alleges denial of a FAPE, *Fry* instructs courts to look to the gravamen of the complaint, "setting aside any attempts at artful pleading." *Id.* at 169. The court must "examine whether a plaintiff's complaint . . . seeks relief for the denial of an appropriate public education." *Id.* In conducting this inquiry, the Supreme Court outlined two hypothetical questions that lower courts should ask: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?

And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* at 171. If the answer to both questions is no, "then the complaint probably does concern a FAPE, even if it does not explicitly say so." *Id.*

### i. Plaintiffs' Federal Claims Under the Fourteenth Amendment

Plaintiffs have brought two federal claims against the Bradley County Defendants, both for violations of Due Process under the Fourteenth Amendment. [Doc. 1 at ¶¶ 75–84]. Plaintiffs' first count alleges that the Bradley County Defendants failed to follow L.T.'s IEP when they improperly restrained her and failed to follow the appropriate steps identified in her IEP. [*Id.* at ¶¶ 75–79]. Plaintiffs' second count alleges that the Bradley County Defendants failed to create an appropriate IEP because they either failed to appropriately draft or implement L.T.'s IEP or plainly failed to follow its instructions. [*Id.* at ¶¶ 80–84].

As a preliminary matter, the Bradley County Defendants argue that Plaintiffs' claims brought against Defendants Campbell, Cooper, and Wisti in their official capacities should be dismissed because they are redundant to the claims against BCBOE. [Doc. 26 at 5–6]. Plaintiffs' complaint [Doc. 1] does not specify whether these Defendants are sued in their individual or official capacities; however, Plaintiffs have not voiced any opposition to this argument, essentially signaling that they do not contest it. *See Sagan v. Sumner County Bd. of Educ.*, 726 F. Supp. 2d 868, 875–76 (M.D. Tenn. July 6, 2010) (dismissing the plaintiff's claims against a special education teacher as redundant because the plaintiff did not raise any arguments in defense). Therefore, based on Plaintiffs' failure to raise any argument in opposition, the Court finds that Plaintiffs' claims against Defendants Campbell, Cooper, and Wisti are brought against them in their official capacities, and, therefore, are tantamount to claims brought against BCBOE. *See Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) ("An official capacity claim filed

8
Case 1:25-cv-00086-CEA-MJD   Document 49   Filed 02/13/26   Page 8 of 20   PageID #: 372

against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." (internal citation omitted)). As such, the motion to dismiss the official-capacity claims against Defendants Campbell, Cooper, and Wisti will be granted.

After carefully reviewing Plaintiffs' complaint, the Court finds that it primarily seeks relief for the denial of a FAPE. As to Count One, courts have routinely found that a complaint regarding restraint conduct seeks relief based on the denial of a FAPE and requires administrative exhaustion. *See P.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 899 (M.D. Tenn. May 29, 2018) (collecting cases). This is because the "discipline of students is primarily educational in nature and isolations and restraints are considerations for the classroom environment, where students need to have their behavior managed in order to learn effectively." *N.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0610, 2017 U.S. Dist. LEXIS 55941, at *35 (M.D. Tenn. Apr. 12, 2017). While the restraint and discipline techniques used may have been improper, they were used as a response to L.T.'s behavior in refusing to go to class, which inherently implicates L.T.'s access to a FAPE.[2] [*See*

---

[2] Courts have drawn a distinction between cases involving the improper use of restraint and those involving abusive or violent conduct against a student for no educational purpose. *See P.G.*, 313 F. Supp. 3d at 902–05 (differentiating claims based on allegation of an improper restraint and a strike to the face); *K.G. v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 244 F. Supp. 3d 904, 922–23 (N.D. Iowa Mar. 23, 2017) (finding that the plaintiffs' claims were predicated on excessive force rather than IDEA based on the significant injuries the student received after being forcefully dragged for a distance). In the latter category, the critical factor has been that the use of physical force was so untethered from the child's education that it could not plausibly serve any disciplinary purpose. *See P.G.*, 313 F. Supp. 3d at 903. Here, although there are legitimate questions and concerns regarding Defendants Cooper, Campbell, and Wisti's use of force and the statements allegedly made to L.T., that conduct arose in connection with L.T.s' refusal to go to class and therefore was not disconnected from her education. Additionally, unlike cases in which courts have found viable excessive-force claims, the force at issue here was limited to a restraint technique, which courts commonly attribute to the denial of a FAPE. *See F. H. v. Memphis City Sch.*, 764 F.3d 638, 645 (6th Cir. 2014) (holding that the complaint did not implicate IDEA because the special needs student was allegedly abused over time, including verbal, physical, and sexual abuse); *Condit v. Bedford Cent. Sch. Dist.*, No. 16-CV-6566 (CS), 2017 U.S. Dist. LEXIS 171701, at *25–26 (S.D.N.Y. Oct. 16, 2017) (complaint alleged allegations of repeated bullying and harassment by other students which was not related to the plaintiff's IEP). In any event, Plaintiffs

9

Doc. 1 at ¶ 30]. Moreover, the answer to both hypothetical questions offered in *Fry* are no. Namely, "isolation and restraint techniques are not implemented on adult employees or visitors of the [Bradley] County schools, nor are they implemented on minors such as the plaintiffs in other public institutions." *N.S.*, 2017 U.S. Dist. LEXIS 55941, at *35.

Count Two further bolsters the Court's finding that Plaintiffs truly seek relief for the denial of a FAPE. Indeed, this claim directly asserts, among other things, that Bradley County Defendants "failed to create an actionable IEP." [Doc. 1 at ¶ 81]. As the Supreme Court articulated in *Fry*, an IEP "serves as the 'primary vehicle' for providing each child with the promised FAPE." *Fry*, 580 U.S. at 158 (internal citation omitted). The allegations that the Bradley County Defendants, including teachers and special education staff, failed to follow the IEP and implement appropriate remedial measures directly relate to the quality of L.T.'s education. *See P.G.*, 313 F. Supp. 3d at 901. Counts One and Two, taken together and individually, demonstrate that the gravamen of Plaintiffs' complaint is about the denial of a FAPE, even if the claims are couched as something other than an IDEA claim. As such, both claims are subject to administrative exhaustion.

Notably, and somewhat surprisingly, Plaintiffs do not raise any arguments in opposition to Bradley County Defendants' argument that Plaintiffs' claims are, in substance, IDEA claims under the *Fry* framework. [*See* Docs. 37, 38]. Instead, Plaintiffs assert that administrative exhaustion, which their claims would ordinarily be subject to, is not required for two reasons: (1) because it would be futile in cases where plaintiffs have not been given full notice of their procedure rights or alleged systemic violations of the IDEA, and (2) because the IDEA's exhaustion remedies

---

have failed to respond to the Bradley County Defendants' argument that these claims are, in substance, IDEA claims. Plaintiffs have therefore waived any opposition to that point. *See Humphrey v. United States Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (plaintiff failed to respond in opposition to argument deemed waived).

provision does not apply where Plaintiffs bring suit for monetary damages under the ADA. [Doc. 38 at 13–18]. However, both of Plaintiffs' arguments miss the mark.

"There are exceptions to the exhaustion requirement, and 'the party who is seeking to avoid exhaustion bears the burden of showing that one of these narrow exceptions applies.'" *Jackie S. v. Connelly*, 442 F. Supp. 2d 503, 518 (S.D. Ohio July 20, 2006) (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)). As to their first argument, Plaintiffs contend that administrative exhaustion is not required where the administrative procedures "would be futile or inadequate to protect the plaintiff's rights, or where plaintiffs were not given full notice of their procedural rights under the IDEA." [Doc. 38 at 14 (internal quotation marks omitted)]. Plaintiffs' futility and actual notice arguments fail for two reasons. First, courts that have found these exceptions to apply generally have done so in very narrow circumstances that are not present here. *See Covington v. Knox County School System*, 205 F.3d 912 (6th Cir. 2000) ("[W]e hold that in the unique circumstances of this case - in which the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole - proceeding through the state's administrative process would be futile . . .."); *Crocker v. Tennessee Secondary School Athletic Ass'n,* 873 F.2d 933, 936–38 (6th Cir. 1989) (futility exception did not apply when the plaintiffs chose not to file administrative complaints); *Doe v. Maher*, 793 F.2d 1470, 1490–91 (9th Cir. 1986) (actual notice exception applied when the school district failed to inform the parents of their procedural rights when it altered the students education plan with no warning). Second, there are no allegations in the complaint demonstrating that Plaintiffs were not aware of their procedural rights or why initiating administrative procedures would be futile. In fact, there are sufficient allegations in the complaint to conclude that Plaintiffs were aware of the procedural requirements contained in the IDEA. [*See* Doc. 1 at ¶¶ 5, 7–9]. Based

on the lack of allegations in the record as to why exhausting the IDEA's administrative remedies would be futile, the Court cannot find that either of these narrow exceptions apply.

Plaintiffs also argue, unsuccessfully, that it would be futile to exhaust the IDEA's administrative remedies because they have alleged "systemic violations of [the] IDEA." [Doc. 38 at 14]. Although other circuits have adopted this exception, the Sixth Circuit has never expressly done so. And, even if it had, Plaintiffs have not alleged anything near what other courts have required for this exception to apply. *See Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 19 (1st Cir. 2019) ("But, to fall under that exception, the alleged violations must be 'truly systemic ... in the sense that the IDEA's basic goals are threatened on a systemwide basis.'" (internal citations omitted)); *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997) ("The IDEA violation at the Pima County Jail does 'not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis.'" (internal citation omitted)); *J.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2004) (involved allegations that the "nature and volume of complaints were incapable of correction by the administrative hearing process"); *New Mexico Ass'n for Retarded Citizens v. New Mexico*, 678 F.2d 847, 851 (10th Cir. 1982) ("The gravamen of the Association's lawsuit is that the entire special education service system offered by the State is infirm.").

Here, Plaintiffs' allegations concern a single special education student, L.T., and center primarily on a discrete incident of alleged misconduct. The complaint does not allege any systemic violations, unlawful policies, or district-wide practices, nor does it identify any structural or programmatic deficiencies with the school district. In short, nothing in the pleadings suggests the kind of system-wide failure that would place Plaintiffs' claims outside the ordinary administrative framework of the IDEA.

Nevertheless, in their response to Bradley County Defendants' motion, Plaintiffs' assert that they are seeking "systemic change within the School District's policies to ensure compliance with state and federal law." [Doc. 38 at 17]. That assertion finds no support in the complaint. Plaintiffs do not challenge any specific policy or pattern of violations beyond the incident involving L.T. Instead, Plaintiffs appear to reason that because they seek injunctive relief, much like the plaintiffs in the cases they cite in support, they must therefore be pursing structural or systemic reform. [*See id.* at 15–17]. Plaintiffs' reasoning is severely misguided. The mere request for injunctive relief does not transform an individualized dispute into a systemic challenge. Indeed, the cases Plaintiffs rely upon underscore why their argument fails: they all include allegations of system-wide violations or a total change in system policy, whereas Plaintiffs' complaint does not. *See W.H. v. Tenn. Dep't of Educ.*, No. 3:15-1014, 2016 U.S. Dist. LEXIS 7206, at *19–20 (M.D. Tenn. Jan. 20, 2016) (finding that the three plaintiffs sought "changes to systemic practices that would potentially have an impact on students with disabilities throughout KCS, as well as the state of Tennessee"); *N.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0160, 2016 U.S. Dist. LEXIS 91589, at *5 (M.D. Tenn. July 14, 2016) ("According to the Complaint, the misuse and overuse of isolation and restraint is a systemic problem throughout KCS, evidenced by specific publicized incidents and a generally disproportionate number of recorded incidents of isolation or restraint, as compared to other school districts in the region of comparable size."); *Jackie S.*, 442 F. Supp. 2d at 518 (allegations of "structural or systemic failure"). Plaintiffs have made no such allegations here. Accordingly, Plaintiffs' futility argument fails.

Plaintiffs' second argument contends that exhaustion is not required because they have brought claims for discrimination in violation of the ADA pursuant to which monetary damages are available. [Doc. 38 at 17–18]. As the Bradley County Defendants correctly note, however, the

complaint's only reference to the ADA appears in its introductory paragraph. [Doc. 1 at ¶ 1]. This reflects a broader pattern in Plaintiffs' responses to the motions to dismiss. Namely, that Plaintiffs repeatedly attempt to advance new theories and allegations that find no support in the pleadings. If Plaintiffs wished to pursue such claims, they could have sought leave to amend their complaint, but they have chosen not to.[3] The Court will not permit Plaintiffs to raise new claims for the first time in a response brief. *Fluker v. Ally Fin., Inc.*, No. 24-1023, 2025 U.S. App. LEXIS 16515, at *2–3 n.2 (6th Cir. July 2, 2025) ("And he cannot amend his complaint by asserting a new claim in response to a motion to dismiss."); *Daniels v. Indep. Sch. Dist. No. (0-001)*, No. CIV-17-974-R, 2018 U.S. Dist. LEXIS 79232, at *4–5 (W.D. Okla. May 9, 2018) ("The Court will not allow Plaintiff to expand the allegations in her Complaint through argument of counsel in a response brief.").

Furthermore, even if Plaintiffs had brought a valid ADA claim, it would still be subject to the IDEA's exhaustion requirement because the relief they ultimately seek is one that can be provided through the IDEA's administrative processes. Plaintiffs argue that their claims are like those brought in *Perez v. Sturgis*, 598 U.S. 142 (2023), and therefore exempt from exhaustion. But *Perez* does not help them here.

In *Perez*, petitioner Perez, a deaf student, filed a lawsuit in federal district court under the ADA seeking backward-looking relief in the form of compensatory damages. *Perez*, 598 U.S. at 145. Importantly, Perez did not seek any forward-looking relief, such as an injunction, because he had already reached a settlement with the school district regarding his continuing education prior

---

[3] Although the Court denied Plaintiffs' request for an extension of time to file an amended complaint as a matter of right, Plaintiffs still had the opportunity to seek leave to amend. [*See* Doc. 35 at 5 ("Should Plaintiffs wish to file an amended complaint, they must do so in accordance with Rule 15(a)(2).")].

14
Case 1:25-cv-00086-CEA-MJD   Document 49   Filed 02/13/26   Page 14 of 20
PageID #: 378

to filing suit. *Id.* The school district filed a motion to dismiss, arguing that Perez's ADA claim was subject to the IDEA's administrative dispute resolution process. *Id.* The district court ultimately agreed and dismissed the suit, and the Sixth Circuit affirmed. *Id.* at 145–46. However, the Supreme Court reversed, holding that a suit "admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides." *Id.* at 149–50. The Court reasoned that the IDEA's administrative exhaustion requirement "applies *only* to suits that 'see[k] relief . . . also available under' IDEA." *Id.* at 147 (citing 20 U. S. C. §1415(l)) (emphasis in original). Because Perez sought relief that the IDEA could not provide, his claim did not need to be exhausted. *Id.*

Here, by contrast, Plaintiffs' complaint, including the allegations and prayer for relief, reveals that they are not seeking backward-looking damages divorced from education services. Indeed, unlike in *Perez* where there was no question that Perez sought only backward-looking compensatory damages, Plaintiffs here seek forward-looking relief aimed at altering L.T.'s education program. For example, Plaintiffs title Count One, "Failure to follow IEP," and title Count Two, "Failure to Create Appropriate IEP." [Doc. 1 at 10–11]. Under Count Two, they allege that the IEP was not "appropriately drafted or implemented as to L.T." and that Defendants failed to follow its instructions. [*Id.* at ¶¶ 80–84]. Plaintiffs then allege damages in excess of $75,000 and assert that they "will suffer irreparable harm" absent relief—language that underscores the forward-looking nature of the relief they seek. [*Id.* at ¶ 84]; *Gale v. O'Donohue*, 751 Fed. Appx. 876, 884–85 (6th Cir. 2018) (explaining that a finding of irreparable injury, in the preliminary injunction context, is forward looking). And in their prayer for relief, Plaintiffs specifically ask for compensatory damages in connection to "corrective action, including but not limited to, current and appropriate training on restraints as well as interpretation of behavior and *an appropriate IEP*

15

*addressing L.T.'s needs*," which are the type of educational, compensatory damages a court may provide under the IDEA. [Doc. 1 at 17 (emphasis added)]; *Somberg v. Utica Cmty. Schs*, 908 F.3d 162, 171 (6th Cir. 2018) ("One type of relief that a court may provide [under the IDEA] is an award of compensatory education." (citing 20 U.S.C. § 1415(i)(2)(C)(iii))). Taken together, these allegations and remedies sought leave little doubt that what Plaintiffs truly seek are changes to L.T.'s educational program, not backward-looking compensatory relief.[4] *See Li v. Revere Loc. Sch. Dist.*, No. 21-3422, 2023 U.S. App. LEXIS 11284, at *32–36 (6th Cir. May 8, 2023) (holding that, although the plaintiffs sought relief under the ADA and other federal statutes, it was skeptical whether the plaintiffs truly sought compensatory damages based on the circumstances in *Perez* and the allegations and relief sought in the plaintiffs' complaint). Looking past Plaintiffs' "artful pleading," the Court finds that the gravamen of the complaint is for relief regarding L.T.'s FAPE and is, therefore, subject to administrative exhaustion.[5] *Fry*, 580 U.S. at 169.

Accordingly, Plaintiffs' federal claims, Counts One and Two, are subject to administrative exhaustion and no exceptions apply to excuse compliance with the IDEA. Because there are no allegations in the complaint indicating that Plaintiffs administratively exhausted their federal

---

[4] Plaintiffs various state law claims also indicate that the complaint seeks relief for a denial of a FAPE. [*See, eg.*, Doc. 1 at ¶ 101 (". . . DEFENDANTS' actions . . . excluded and isolated Plaintiff from her peers and a Free Appropriate Public Education . . . ."); *Id*. at ¶ 106 ("DEFENDANTS failed to disclose to Plaintiff that Defendants had no intention of affording her a Free Appropriate Public Education . . . ."); *Id*. at ¶ 113 ("Plaintiff was not in a position to execute new IEPs with DEFENDANTS . . . ."); *Id*. at ¶ 129 ("DEFENDANTS failed in every material way to provide Plaintiff with Free Appropriate Public Education.").

[5] Again, Plaintiffs had the opportunity to leave little doubt about the type of relief they seek by requesting leave to amend their complaint; however, Plaintiffs have chosen not to do so. *See Doe v. Nelsonville-York Sch. Dist. Bd. of Educ.*, No. 2:20-cv-4467, 2022 U.S. Dist. LEXIS 87408, at *6–7 (S.D. Ohio May 16, 2022) (plaintiffs voluntarily dismissed any claims related to a FAPE and explicitly included in their complaint that "[t]his is a suit for damages and not prospective relief"). Instead, it seems as if Plaintiffs have attempted to assert new claims and allegations through their responsive briefings, something the Court will not allow them to do.

claims against the Bradley County Defendants, those are **DISMISSED WITHOUT PREJUDICE** as to the Bradley County Defendants.

ii. Plaintiffs' Remaining State Law Claims

Plaintiff's remaining claims against the Bradley County Defendants arise under state law. [*See* Doc. 1 at ¶¶ 85–136]. District courts "may decline to exercise supplemental jurisdiction" over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(2). That is, this Court need not exercise supplemental jurisdiction over Plaintiff's state law claims since Defendants were entitled to judgment on the federal claims. *See Millinder v. Hudgins*, 421 F. Supp. 549, 564-65 (W.D. Tenn. 2019) (declining to exercise supplemental jurisdiction over state claims after granting summary judgment for Defendants on federal claims). In fact, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see Artis v. Dist. of Columbia*, 138 S. Ct. 594, 597-98 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims.").

Because the Court has dismissed Plaintiffs' federal claims against the Bradley County Defendants and, as explained further below, will similarly dismiss the federal claims against Defendant Moats, it will decline to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, Plaintiff's state law claims against the Bradley County Defendants are **DISMISSED WITHOUT PREJUDICE**.

### b. *Defendant Moats's Motion to Dismiss [Doc. 16]*

Defendant Moats argues that Plaintiffs' claims against him should be dismissed for a multitude of reasons. Among other things, he asserts that Plaintiffs have failed to allege any actionable wrongful conduct attributable to him. [Doc. 17 at 2–5]. Plaintiffs' Response [Docs. 39, 40] to Defendant Moats's Motion to Dismiss [Doc. 16] is largely unresponsive and consists primarily of arguments directed at the Bradley County Defendants' Motion to Dismiss [Doc. 20] rather than Defendant Moats's. As has become a recurring theme in this litigation, Plaintiffs' briefing is inadequate and, at times, confusing, making it difficult to discern which arguments are intended to apply to which Defendant. In any event, Plaintiffs have failed to plead enough factual allegations against Defendant Moats to state a plausible claim under the Fourteenth Amendment.

#### i. Plaintiffs' Federal Claims Under the Fourteenth Amendment

Plaintiffs have brought two separate counts against Defendant Moats for violations of Due Process under the Fourteenth Amendment. [Doc. 1 at ¶¶ 75–84]. However, the allegations in the complaint are plainly insufficient to hold Defendant Moats liable under Counts One and Two.

As to Count One, Plaintiffs allege that Defendants, including Defendant Moats, deprived L.T. of her right to due process by (1) improperly choking L.T., (2) using improper holds on L.T., and (3) failing to follow L.T.'s IEP. [*Id.* at ¶¶ 76–78]. However, there are no allegations in the complaint that allege or demonstrate that Defendant Moats choked or held L.T. in an improper manner. In fact, the complaint explicitly states that it was Defendant Cooper who "held L.T. in an improper restraint." [*Id.* at ¶ 55]. The only time it is specifically alleged that Defendant Moats touched L.T. was when he "grabbed her hands with his hands" after L.T. reached for items on his belt. [*See id.* at ¶¶ 41, 61]. Moreover, there are no factual averments, other than general and conclusory allegations, as to (1) how Defendant Moats specifically violated L.T.'s IEP; (2)

whether he even knew about L.T.'s IEP, and (3) whether he, as the school resource officer, had an obligation to follow L.T.'s IEP. Indeed, out of the entire 136 paragraphs in the complaint, Defendant Moats is directly referenced in only 15 of them, and none of them assert facts explaining what protectable interest L.T. had and how Officer Moats deprived her of it in violation of due process. [*See id*. at ¶¶ 32–33, 40–41, 43–45, 53–55, 59–61, 64–65]. Based on the insufficient allegations in the complaint, Plaintiffs simply cannot assert a plausible procedural or substantive due process claim against Defendant Moats. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (explaining that a procedural due process claim requires the plaintiff to establish that the defendant deprived the plaintiff of a protected interest); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012) (holding that a state actor violates substantive due process only if it can be characterized as "arbitrary, or conscience shocking, in a constitutional sense").

Count Two suffers the same fatal flaw. In this Count, Plaintiff alleges that Defendant Moats (1) failed to create an actionable IEP, and (2) disregarded L.T.'s IEP. [Doc. 1 at ¶¶ 80–84]. But, again, the complaint contains no allegations of how Defendant Moats specifically disregarded L.T.'s IEP and whether Defendant Moats, as a school resource officer, is even involved in the creation and drafting of a student's IEP. Moreover, the 15 allegations in the complaint that refer to Defendant Moats are plainly insufficient to also support a due process claim relating to this particular conduct.

Not surprisingly, Plaintiffs fail to address Defendant Moats's argument that there are insufficient allegations for due process claims against him. Instead, Plaintiffs attempt to argue that they have brought an ADA and standalone IDEA claim against Defendant Moats. [*See* Doc. 39 at 6–7]. The Court has already explained that it will not permit Plaintiffs to raise new claims for the first time in a response brief. And even still, there are no factual allegations in the complaint that

show how Defendant Moats discriminated against L.T. because of her disability or how he specifically violated the IDEA.

As to the federal claims against Defendant Moats, the allegations are patently insufficient to state a plausible claim for relief under any of Plaintiffs' asserted theories. Accordingly, Plaintiffs' federal claims against Defendant Moats in Counts One and Two are **DISMISSED WITHOUT PREJUDICE**.

ii. Plaintiffs' Remaining State Law Claims

Plaintiff's remaining claims against Defendant Moats arise under state law. [*See* Doc. 1 at ¶¶ 85–136].

Because the Court has dismissed all of Plaintiffs' federal claims against each Defendant, it will decline to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, Plaintiff's state law claims against Defendant Moats are **DISMISSED WITHOUT PREJUDICE**.

IV. **CONCLUSION**

For the reasons stated above, Defendant Jordan Moats's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim upon Which Relief Can Be Granted [Doc. 16] and Defendants Bradley County Board of Education, Kirk Campbell, Katie Cooper, and Jennifer Wisti's Motion to Dismiss [Doc. 20] are **GRANTED**. All of Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**